1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9

Fox Joseph Salerno,                    )    No. CV-05-1277-PHX-ROS (LOA)
10                                      )
              Petitioner,               )    **REPORT AND RECOMMENDATION**
11                                      )
vs.                                     )
12                                      )
Dora B. Schriro, et al.,               )
13                                      )
              Respondents.             )
14 _____ )

15          This matter arises on Petitioner's Petition for Writ of Habeas Corpus by Person in

16   State Custody Pursuant to 28 U.S.C. §2254 challenging Petitioner's 2001 conviction for theft

17   in the Superior Court of Arizona, Maricopa County, Cause Number CR2000-017362.  (docket

18   # 1)  Respondents filed an Answer to the Petition (docket # 23) to which Petitioner has replied

19   (docket # 31).

20                    **FACTUAL AND PROCEDURAL BACKGROUND**

21   **I. Indictment and Trial**

22          On November 13, 2000, the State of Arizona charged Petitioner with theft, a class

23   3 felony.  (Respondents' Exh. A) The State alleged that while acting as a manager of a Taco Bell

24   restaurant, Petitioner misappropriated funds and made unauthorized purchases.  (Id.) The State

25   initially alleged that between December 8, 1999 and May 24, 2000, Petitioner, "without lawful

26   authority, knowingly, obtained by means of a material misrepresentation, Taco Bell's *U.S.*

27   *Currency*, of a value of $3,000 or more, but less than $25,000, with the intent to deprive Taco

28   Bell of such property or services . . . ."  (Respondents' Exh. A at 1)(emphasis added)

The State also alleged four prior felony convictions:

On February 2, 1984, [Petitioner] committed the crime of Theft, a Class 5 Felony, and [Petitioner] was convicted for that crime on May 18, 1984, such conviction arising in the Superior Court, Maricopa County, Arizona, in Cause Number CR 138898.

On July 12, 1984, [Petitioner] committed the crime of Theft, a Class 4 Felony and [Petitioner] was convicted for that crime on December 15, 1987, such conviction arising in Superior Court, Maricopa County, Arizona, in Cause Number CR 706179.

On February 12, 1992, [Petitioner] committed the crime of Theft, a Class 4 Felony, and [Petitioner] was convicted for that crime on August 18, 1992, such conviction arising in the Superior Court, Cochise County, Arizona, in Cause Number CR 92-0075.

On February 4, 1987, [Petitioner] committed the crime of Fraudulent Schemes and [Petitioner] was convicted for that crime on June 10, 1987, such conviction arising in the Superior Court, Pima County, Arizona, in Cause Number CR 20397.

(Respondents' Exh. C)

Thereafter, the State requested a hearing pursuant to Arizona Rule of Evidence 609 to determine the admissibility of evidence of Petitioner's prior felony convictions for impeachment purposes.  (Respondents' Exh. D)  The State also filed notices of intent to use other act evidence, pursuant to Arizona Rule of Evidence 404(b).  (Respondents' Exh. E)

Petitioner filed a request for the disclosure of Taco Bell's business records and its accounts with various local vendors. (Respondents' Exh. F)  Petitioner filed a supplemental list of witnesses notifying the State that the defense might call several Taco Bell employees as witnesses. (Respondents' Exh. G)   Petitioner also moved to suppress receipts from Home Depot, Office Max, OPACS (Office Products and Computer Supplies, Inc.), and items seized from his home including a computer, commercial vacuum, television, bank statements, and Taco Bell promotional items.  (Respondents' Exh. H)

Before jury selection began, on May 10, 2001, the trial court[1] heard argument on the foregoing motions. (Respondents' Exh. I at 4-13)   The trial court questioned whether the offense was properly alleged in the indictment, which charged Petitioner with theft of "U.S.

---

[1]  The Honorable Michael D. Jones presided.

currency," because Petitioner did not actually obtain currency from Taco Bell.  (Id. at 13)  The prosecutor indicated that he would contact his superiors regarding the phrasing of the indictment.  (Respondents' Exh. I at 17)  Before the issue regarding the indictment was resolved, however, *voir dire* commenced.  (Respondents' Exh. I)  Petitioner moved to strike prospective jurors Gregory Pulice and John Callahan.  (Respondents' Exh. I at 90-91)  The trial court denied that motion.  (Respondents' Exh. I at 91-92)  Petitioner stated that he passed the jury panel, with the noted objections.  (Id. at 93)  Petitioner used peremptory strikes to remove Pulice and Callahan from the jury panel.  (Respondents' Exh. J)

Before the jury was empaneled, the State moved to amend the indictment by adding the phrase, "money and other property."  (Respondents' Exh. I at 94-95)  Petitioner objected.  (Id. at 95-96)  The trial court withheld ruling on the matter pending further research and argument.  (Id. at 96)  Regarding the admission of other act evidence, the trial court ruled that the State could present evidence that, on the job application which Petitioner submitted to Taco Bell, Petitioner omitted his prior convictions and falsified his date of birth and social security number.  (Id. at 97)  Thereafter, the jury was empaneled and sworn by the court.  (Respondents' Exh. I at 102)  The clerk formally read the indictment as originally drafted.  (Id. at 103)  The court gave the jury preliminary instructions regarding trial procedures and their duties and then excused the jury for the day.  (Respondents' Exh. I at 103-119)

The trial judge remained on the bench to consider the admissibility of evidence of Petitioner's prior convictions under Ariz.R.Crim.P. 609.  (Respondents' Exh. I at 119-20)  The State submitted Petitioner's "pen-pack" or prison record to the trial court for its review.  (Id. at 120)  The trial court deferred ruling until the next trial date.  (Id. at 120-23)  The trial court denied Petitioner's motion to suppress evidence seized pursuant to execution of a search warrant on Petitioner's home.  (Respondents' Exh. I at 127-28)

At the start of the next trial day, Petitioner argued that the State's proposed amendment to the indictment was untimely, but raised no other challenges to the amendment.  (Respondents' Exh. K at 3) The trial court granted the State's motion to amend the indictment.  (Id.)  Thus, the State amended the indictment to allege that Petitioner "obtained by means of a

1   material misrepresentation, Taco Bell's U.S. Currency, *that is money and/or property*, of a value

2   of $3,000 or more, but less than $25,000, with the intent to deprive Taco Bell of such property

3   or services . . . ." (Respondents' Exh. B)(emphasis added).  Next, the parties reviewed the prior

4   convictions and determined that Petitioner's two most recent prior convictions could be used for

5   impeachment. (Respondents' Exh. K at 4-8)  The trial court ruled that Petitioner would be

6   subject to impeachment with his two most recent prior convictions if he testified.  (Id. at 8)

7            Thereafter, defense counsel advised the trial court that Petitioner wished to represent

8   himself.  (Respondents' Exh. K at 8)  After a brief discussion of the issue between Petitioner,

9   his counsel, and the court, defense counsel requested that the court defer its ruling until after the

10  lunch break to give counsel another opportunity to confer with Petitioner. (Id. at 11)  After the

11  break, the clerk formally read the indictment as amended.  (Id. at 12-13)  After the State's

12  opening statement, Petitioner informed the trial court that he wished to represent himself.  (Id.

13  at 22)  After questioning Petitioner and advising him of his rights, the trial court concluded that

14  Petitioner knowingly, intelligently, and voluntarily waived his right to counsel.  (Id. at 22-28)

15  The trial court assigned appointed counsel John Blischak the role of advisory counsel.

16  (Respondents' Exh. K at 28)

17           Petitioner then made his opening statement, asserting that his actions did not

18  constitute theft because Taco Bell benefitted from the purchases, and that he was being

19  prosecuted because he had ended an affair with a supervisor.  (Respondents' Exh. K at 30-37)

20  Petitioner also claimed that he was dyslexic and that he would present expert testimony

21  regarding dyslexia if he could obtain such an expert on short notice.  (Respondents' Exh. K at

22  53)

23           Thereafter, the State presented the testimony of numerous local vendors on contract

24  with Taco Bell. (Respondents' Exh. K at 59-161)  The next day, the State presented the

25  testimony of Petitioner's mother, Taco Bell employees, Petitioner's direct supervisor, and the

26  loss prevention officer. (Respondents' Exh. L at 11-16, 32-173)  On the third day of trial, two

27  more Taco Bell employees and Detective Doug Steele testified.  After Detective Steele finished

28  testifying, the trial court took an afternoon recess at 2:34 p.m. (Respondents' Exh. M at 4-66,

88-142; Exh. N at 4)  Trial resumed at 2:49 p.m. with the testimony of Criminalist Howard Birnbaum.  (Respondents' Exh. M at 143-53)  The State then rested.  (Id. at 153)

Petitioner moved for judgment of acquittal pursuant to Ariz.R.Crim.P. 20.  During a bench conference, the trial court denied Petitioner's Rule 20 motion.  (Respondents' Exh. M at 153-54)  The court took its next break at 3:44 p.m.  (Respondents' Exh. M at 182, Exh. N. at 5)

When the trial reconvened at 3:59 p.m., the court notified the parties, outside of the jury's presence, that the jurors had given the bailiff a two-page document on dyslexia that they had found on the jury room table during the break.  (Respondents' Exh. M at 183, Exh. N at 5)  The bailiff advised the court that the document did not belong to any of the jurors and that they were concerned about its appearance in the jury room.  (Respondents' Exh. M at 183)  When questioned about the document, Petitioner claimed that he was not responsible for bringing it to the courthouse.  (Respondents' Exh. M at 183)  The prosecutor claimed no prior knowledge of the document and pointed out that Petitioner had made the only references to dyslexia.  (Respondents' Exh. M at 183)  Petitioner replied that he could not have entered the jury room because he had been in the custody of the Sheriff's Department all day.  (Respondents' Exh. M at 184)  Advisory counsel also stated that he had not entered the jury room.  (Id.)  The trial court advised the parties that it would remind the jurors not to conduct independent research and investigation, and that they should disregard the document which may have been inadvertently left on the jury room table by someone unrelated to the case.  (Respondents' Exh. M at 184)

Thereafter, the trial court advised the jury as follows:

> And, ladies and gentlemen, I know that you found some documents or a document on the jury room table.  Marleen reports to me that none of you brought that document in.  I have inquired of everyone here in court. No one here brought that document in.  However, sometimes our jury room is used in the morning for attorneys' conferences.
>
> You know we have a full calendar that begins at 8:15 in the morning, and my best guess is that someone else left it in the jury room, mistakenly left it in the jury room.  I will instruct you, of course, that what you did was appropriate, giving it to the bailiff, because it is not evidence in this case.  It is not anything that you would consider.

> And even though I know that none of you brought that in, let me just remind you just in case, throughout the trial and even during deliberations, you are ordered not to do any investigations or make research on your own.

(Respondents' Exh. M at 185-86)  The next day, Petitioner revoked his waiver of counsel after examining his last witness.  (Respondents' Exh. P at 59)  Petitioner then testified on his own behalf.  (Id. at 64-170)  Petitioner admitted that he had two prior felony convictions.  He testified as to the case numbers and the dates of conviction, and stated that he was represented by counsel in both matters.  (Id. at 65, 123-24)  The trial court instructed the jury and submitted the case to the jury late that afternoon.  (Id. at 209)

The jury returned on May 18, 2001 to continue deliberating and returned its verdict. The minute entry and the May 18, 2001 transcript identify the Honorable Michael Jones as the trial judge.  (Respondents' Exh. R)  However, during subsequent proceedings, Judge Jones and advisory counsel indicated that Judge Jones had been ill on the day the verdict was rendered. (Respondents' Exh. Q; Exh. R at 5; Exh. S at 22)  The record does not clearly identify the substitute judge. However, it appears that the Honorable Robert R. Gottsfield substituted that day. (Petitioner's Exh. J1)  During deliberations on May 18, 2001, the jury submitted two questions to the court to which the court responded.  The minute entry does not indicate that a court reporter was present for the proceedings regarding the jury's questions. (Respondents' Exh. Q)  Although the transcript does not contain any discussion of the jury questions, it does indicate that both counsel were present. (Respondents' Exh. X at 7)

The jury found Petitioner guilty as charged. (Respondents' Exh. R at 3)  The jury further found that the value of the property which Petitioner had obtained was between $3,000 and $25,000.  (Respondents' Exh. T) The jury clarified that, "[w]e believe the amount should be between $3,000 and $3,500." (Id.)  The trial court scheduled the time for entry of judgment of guilt and sentence before Judge Jones.  (Respondents' Exh. R at 5)

Thereafter, Petitioner escaped from custody and the trial court, the Honorable Michael Jones, issued a bench warrant for his arrest. (Respondents' Exh. S at 3)  The trial court also denied Petitioner's motion for a new trial.  (Respondents' Exh. S at 19)  The prosecutor expressed concern that Petitioner might not be apprehended for years and that it was possible

1   that the judge, prosecutor, and other parties could be unavailable when Petitioner was finally

2   caught.  (Respondents' Exh. S at 21)  Therefore, the prosecutor requested that the court make

3   a ruling regarding Petitioner's prior felony convictions.  (Respondents' Exh. S at 21-22)  The

4   trial court found that two prior felony convictions had been proven, noted that it had reviewed

5   Petitioner's pen-pack at the time it had made the Rule 609 finding, and noted that Petitioner had

6   admitted the two prior convictions during trial.  (Id. at 23-24)

7           On June 27, 2001, Petitioner was apprehended.  (Respondents' Exh. U).  On July 18,

8   2001, the trial court sentenced Petitioner to a 20-year term of imprisonment.  (Respondents' Exh.

9   V)  The trial court also ordered restitution of $1,280.92 to Taco Bell.  (Respondents' Exh. V at

10  22)

11  **II.  Direct Appeal**

12          Petitioner filed a timely appeal raising the following issues:

13          1.  The court erred in failing to strike two prospective jurors for cause.

14          2.  The court erred in permitting amendment to the indictment after jury
            selection but before opening statements.

15

16          3.  The trial court erred in failing to declare a mistrial based on the jury's
            exposure to extra-record evidence.

17          4. Petitioner was prejudiced because the presiding judge was out sick
            the day of jury deliberations and someone else responded to jury questions

18          without consulting counsel.

19          5.  The trial court's finding of prior felony convictions was deficient.

20  (Respondents' Exh. W)    On October 15, 2002, the Arizona Court of Appeals affirmed

21  Petitioner's conviction and sentence.  (Respondents' Exh. X)

22          Petitioner petitioned the Arizona Supreme Court for review raising the same claims.

23  (Respondents' Exh. Y)  On February 11, 2003, the Arizona Supreme Court denied review.

24  (Respondents' Exh. Z)

25  **III.  First Petition for Post-Conviction Relife**

26          On February 6, 2003, Petitioner filed a petition for post-conviction relief.

27  (Respondents' Exh. AA) Petitioner later filed a Supplemental Petition raising the following

28  claims:

1.  Judicial misconduct by the trial court.

2.  The prosecutor paid a witness to commit perjury.

3.  The trial court erroneously enhanced Petitioner's sentence.

4.  The trial court erred in permitting evidence obtained by an unconstitutional search and seizure.

5.  The prosecutor wrongly suppressed exculpatory evidence.

6.  The trial court erred in considering prior convictions when sentencing Petitioner.

7.  Petitioner's was convicted for conduct that was outside the scope of the indictment.

8.  The jury engaged in misconduct.

(Respondents' Exh. BB)  The trial court found that all of Petitioner's claims, except for those raises in ground 7, were precluded.  The court further found that the allegations raised in ground 7 failed to satisfy the newly discovered evidence standard.  (Respondents' Exh. EE)

On December 29, 2003, Petitioner sought review in the Arizona Court of Appeals. (Respondents' Exh. FF)  On July 2, 2004, Petitioner filed a "notice of change of law" alleging a violation of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).  (Respondents' Exh. GG)  On August 18, 2004, the Arizona Court of Appeals issued an order finding that <u>Blakely</u> did not apply to Petitioner's case which was final on direct review before that decision was issued. (Respondents' Exh. HH)  Thereafter, on January 28, 2005, the appellate court summarily dismissed the petition in its entirety  (Respondents' Exh. II)  On March 24, 2005, the Arizona Court of Appeals refused to file Petitioner's petition for review to the Arizona Supreme Court because it exceeded the page limit by 57 pages and because Petitioner had not provided the correct number of copies.  (Respondents' Exh. JJ) (citing Ariz.R.Crim.P. 31.19(a))

**IV.  Second Petition for Post-Conviction Relief**

On July 2, 2004, Petitioner filed a second petition for post-conviction relief again claiming <u>Blakely</u> error.  (Respondents' Exh. KK)  On July 28, 2004, the trial court ruled that Petitioner was not entitled to relief because new procedural rules, such as the rule announced in <u>Blakely</u>, do not apply retroactively to cases already final on direct review.  (Respondents' Exh. KK)   Petitioner petitioned for review in the Arizona Court of Appeals.  (Respondents'

Exh. LL)  On October 27, 2004, the appellate court denied review.  (Respondents' Exh. MM)

The Arizona Supreme Court also denied review.  (Respondents' Exhs. NN, OO)

**V.  Petition for Writ of Habeas Corpus**

Thereafter, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims:

1.  The trial court erred in failing to strike two prospective jurors for cause.

2.  The indictment was improperly amended after jury selection but before opening statements.

3.  Petitioner was denied a fair and impartial trial because: (a) the substitution of the judge was error; (b) defense counsel was not informed of jury questions and the court's responses; (c) an undisclosed answer to a jury question altered the verdict form; and (d) jury questions were answered by the court clerk.

4.  Petitioner was denied a fair trial because jurors were exposed to extra-record evidence.

5.  Petitioner's sentence is unconstitutional because (a) the elements required to enhance Petitioner's sentence beyond the statutory maximum were not proved beyond a reasonable doubt; (b) the trial court imposed an enhanced sentence based on bigoted religious beliefs; and (c) the enhanced sentence violated the rule announced in <u>Apprendi</u>/ <u>Blakely</u>.

6.  Petitioner's conviction was obtained pursuant to an unlawful search and seizure because the police conducted two illegal and bad faith searches by forging the judge's signature and placing a fake court seal on both search warrants.

7.  The prosecution failed to disclose exculpatory evidence and (a) undisclosed supplemental police reports contained financial records of the corporate victim which Petitioner had requested, and (b) the undisclosed financial reports establish that Petitioner was convicted of unindicted charges.

(docket # 1)  Respondents filed an Answer to the Petition (docket # 23) to which Petitioner has replied.  (docket # 31)

# <u>ANALYSIS</u>

**I.  Timeliness**

Respondents concede that the petition is timely under 28 U.S.C. § 2244(d)(1).  The Court, therefore, will not address this issue.

///

**II.  Exhaustion and Procedural Default**

Respondents assert that several of Petitioner's claims are procedurally defaulted. The Court, therefore, will discuss the law relevant to this issue.

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted, in state court, every claim raised in his petition. Coleman v. Thompson, 501 U.S. 722, 731 (1991). To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting" them to the state courts in a procedurally appropriate manner. Castille v. Peoples, 489 U.S. 346, 349 (1989); Baldwin v. Reese, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim.").

It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. Reese, 541 U.S. at 28 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. Tamalini v. Stewart, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." Lyons,

232 F.3d at 668.  A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim.  Baldwin, 541 U.S. at 27.

Where a prisoner fails to "fairly present" a claim to the State courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted."  This type of exhaustion is often referred to as "procedural default" or "procedural bar." Ylst v. Nunnemaker, 501 U.S. 797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two categories of procedural default.

First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court.  Nunnemaker, 501 U.S. at 802-05.  If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar.  Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carringer v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, en banc court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review).  A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar. Nunnemaker, 501 U.S. at 803.

Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." Teague v. Lane, 489 U.S. 288, 297-99 (1989).  Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision).  A state post-conviction action is futile where it is time-barred.  Beaty, 303 F.3d at

1  987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under

2  Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction

3  relief, distinct from preclusion under Rule 32.2(a)).

4       In either case of procedural default, federal review of the claim is barred absent a

5  showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v. Haley,

6  541 U.S. 386, 393-94, (2004); Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish cause,

7  a petitioner must establish that some objective factor external to the defense impeded his efforts

8  to comply with the state's procedural rules. Id. The following objective factors may constitute

9  cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim

10  was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Id. To

11  establish prejudice, a prisoner must demonstrate that the alleged constitutional violation

12  "worked to his actual and substantial disadvantage, infecting his entire trial with error of

13  constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982). Where petitioner

14  fails to establish cause, the court need not reach the prejudice prong.

15       To establish a "fundamental miscarriage of justice" resulting in the conviction of one

16  who is actually innocent, a state prisoner must establish that it is more likely than not that no

17  reasonable juror would have found him guilty beyond a reasonable doubt in light of new

18  evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

19  **III.  Standard of Review**

20       A state prisoner "whose claim was adjudicated on the merits in state court is not

21  entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."

22  Price v. Vincent, 538 U.S. 634, 638 (2003). Thus, a state prisoner is not entitled to relief unless

23  he demonstrates that the state court's adjudication of his claim:

24       (1) resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established Federal law, as
25       determined by the Supreme Court of the United States; or

26       (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the State
27       court proceedings.

28  28 U.S.C. § 2254(d).

1   The federal court first determines whether the United States Supreme Court has

2   "clearly established" the law on the legal issue which Petitioner raises.  Lockyer v. Andrade,

3   538 U.S. 63, 71 (2003).  Where the U.S. Supreme Court has not yet clearly established a rule

4   of law, the writ will not issue.  Mitchell v. Esparaza, 540 U.S. 12 (2004).

5   Under the "contrary to" clause of § 2254(d), a federal habeas court may not issue a

6   writ, unless the state court: (1) applied a rule of law "that contradicts the governing law set forth

7   in [Supreme Court] cases," or (2) "confronts a set of facts that are materially indistinguishable

8   from a decision of [the Supreme Court] and nevertheless arrives at a result different from

9   [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 411 (2000).  In summary, a

10  petitioner must establish that Supreme Court precedent requires a contrary outcome because the

11  state court applied the wrong legal rules.  Where a state court decision is deemed to be "contrary

12  to" clearly established federal law, the reviewing court must next determine whether it resulted

13  in constitutional error.  Benn v. Lambert, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).  If

14  constitutional error occurred, the next question is whether such error was structural, in which

15  case petitioner is entitled to habeas corpus relief.  Id.  If the error was not structural, the final

16  question is whether the error had a substantial and injurious effect on the verdict, or was

17  harmless.  Id.

18  A state court decision is reviewed under the "unreasonable application of" standard

19  where the decision identifies the correct legal rule, but unreasonably applies the rule to the facts

20  of a particular case.  Williams, 529 U.S. at 405.   Under this standard, "[i]t is not enough that

21  a federal habeas court, in its independent review of the legal question," is left with the "firm

22  conviction" that the state court ruling was "erroneous."  Id.; Andrade, 538 U.S. at 75.  Rather,

23  the state court decision "must be objectively unreasonable."  Middleton v. McNeil, 541 U.S. 433

24  (2004); Andrade, 538 U.S. at 76.  An *unreasonable* application is different from an incorrect

25  application of law.  Bell v. Cone, 535 U.S. 685, 694 (2002).  Likewise, an incorrect application

26  of state law is insufficient to satisfy the standard of review.  Id.  This standard is not the same

27  as "clear error."  Andrade, 538 U.S. at 75-76.  "The gloss of clear error fails to give proper

28  deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at

1   75 (citations omitted).  As with the state court decisions that are "contrary to" established

2   federal law, where a state court decision is an "unreasonable application of" Supreme Court

3   precedent, federal habeas relief is unavailable if the error was non-structural or harmless.  Benn,

4   283 F.3d at 1052 n. 6.

5   **IV.  Analysis of Petitioner's Claims**

6          **A.  Ground 1 - Fair and Impartial Jury**

7          In his first ground for relief, Petitioner argues that he was denied a fair and impartial

8   jury because the trial court refused to strike two prospective jurors for cause.  (docket # 1 at 11-

9   19) Petitioner claims that the trial court should have stricken prospective jurors John Callahan

10  and Greg Pulice for cause because they were biased.  He further argues that because the trial

11  court failed to strike these two jurors, he "wasted" two peremptory strikes which he would have

12  used to strike two other prospective jurors.  (docket # 1 at 27)  Petitioner does not identify the

13  venirepersons that he would have stricken had he not used two strikes on Callahan and Pulice.

14  Petitioner raised this federal claim in a procedurally proper manner to the state courts.

15  Accordingly, it is properly before this court on habeas corpus review.

16          On direct appeal, the Arizona Court of Appeals held that the trial court did not abuse

17  its discretion in failing to strike Callahan and Pulice for cause.  (Respondents' Exh. X at 3-4)

18  As discussed below, Petitioner does not establish that this decision is contrary to, or rests on an

19  unreasonable application of, federal law.  28 U.S.C. § 2254(d).  Accordingly, this claim does

20  not entitle Petitioner to § 2254 relief.

21          Petitioner claims that the trial court's failure to strike for cause two prospective

22  jurors violated his right to a fair and impartial jury guaranteed by the Sixth and Fourteenth

23  Amendments.  Petitioner contends that two prospective jurors, Callahan and Pulice, were biased

24  against him and, therefore, they should have been dismissed for cause.  Challenges for cause

25  require the challenging party to articulate the precise reason for challenging the potential juror,

26  but the decision whether to exclude a panel member for cause is vested in the trial court.  Gray

27  v. Mississippi, 481 U.S. 648, 652 n. 3 (1987) ( stating that "motion to excuse a venire member

28

1  for cause ... must be supported by specified causes or reasons that demonstrate that, as a matter

2  of law, the venire member is not qualified to serve.").

3         Here, defense counsel moved to strike Callahan, a retired agent for the Federal

4  Bureau of Investigation, who advised the court of his personal experience in law enforcement

5  and indicated that "if I were the defendant, I wouldn't want me on the jury panel."

6  (Respondents' Exh. X at 2; Exh. I at 38-39, 85-86)  Defense counsel moved to strike Pulice for

7  cause because he had indicated that he objected to "the behavior" of homosexuals and it was

8  anticipated that there might be testimony regarding Petitioner's sexual orientation.

9  (Respondents' Exh. X at 2; docket # 1 at 14; Respondents' Exh. I at 84-85)  The trial court

10 denied both motions. The court found that Callahan had indicated that he could follow the

11 court's instructions and that he could be fair and impartial despite his background in law

12 enforcement. (Respondents' Exh. I at 39, 52, 58, 82-83).  The court similarly found that Pulice

13 had indicated that despite his opinions against "gay behavior," he could follow the court's

14 instructions and remain impartial. (Respondents' Exh. I at 85)  Because the trial court did not

15 strike these two potential jurors for cause, Petitioner's counsel used two peremptory challenges

16 to remove them from the jury.

17         Even if the trial court erred in failing to strike the prospective jurors in question,

18 such error does not constitute an unconstitutional denial of the right to a fair and impartial jury

19 unless the venire members sit on the jury.  United States v. Martinez-Salazar, 528 U.S. 304

20 (2000); Comer v. Schriro, 463 F.3d 934, 961-62 (9th Cir. 2006)(rejecting challenge to court's

21 failure to strike prospective jurors for cause.). The loss of peremptory challenges does not

22 constitute "a violation of the right to an impartial jury . . . [P]eremptory challenges are not of

23 constitutional dimension.  They are a means to achieve the end of an impartial jury." Ross v.

24 Oklahoma, 487 U.S. 81, 88 (1988) (citations omitted). "So long as the jury that sits is impartial,

25 the fact that the defendant had to use a peremptory challenge to achieve that result does not

26 mean the Sixth Amendment was violated." Id.  Because the allegedly biased venirepersons,

27 Callahan and Pulice, were not members of Petitioner's jury, no constitutional violation occurred.

28 Id.  Petitioner's use of peremptory strikes to empanel a fair jury did not deprive him of a

1 constitutional right.  Martinez-Salazar, 528 U.S. at 313.  In view of the foregoing, Petitioner's

2 first ground for relief fails.

3 **B.  Ground 2 - Amendment of the Indictment**

4 In his second ground for relief, Petitioner claims that he was denied a fair trial

5 because the trial court allowed the State to amend the indictment after the jury was empaneled

6 but before opening statements. (docket # 1 at 19-25)  Petitioner further alleges that the

7 amendment was prejudicial because it altered the nature of the offense and the defense strategy.

8 (docket # 1 at 19)  At trial, Petitioner objected to the State's motion to amend only as untimely,

9 not on the grounds he now raises.  (Respondents' Exh. K at 3)   Similarly, on direct appeal,

10 Petitioner only argued that the trial court erred by permitting the State to amend the indictment

11 after *voir dire*, but before opening statements.  (Respondents' Exh. X at 4; Exh. W at 37-39)

12 The appellate court noted that during trial Petitioner had not argued that the amendment

13 changed the nature of the charge.  (Id.)  Rather, Petitioner only objected to the amendment as

14 untimely. The appellate court ruled that the amendment did not alter the theft offense or

15 prejudice Petitioner.  (Respondents' Exh.  X at 4-5)  The court explained that the record

16 reflected that Petitioner "was aware of the State's general theory that he committed theft by

17 utilizing accounts and/or credit available to his employer to obtain property for his personal use

18 without authority." (Respondents' Exh. X at 5)  Thus, Petitioner had sufficient notice of the

19 charge to prepare a defense. (Id.)

20 Respondents assert that Petitioner's federal challenge to the amendment of the

21 indictment is procedurally barred because Petitioner failed to contemporaneously object on

22 federal grounds during trial and because the appellate court applied the contemporaneous

23 objection rule to Petitioner's assertion of a federal claim.  Alternatively, Respondents assert that

24 Petitioner's challenge to the indictment lacks merit.  Because the Court finds that Petitioner's

25 claim fails on the merits, it need not resolve the procedural issue.  28 U.S.C. § 2254(b)(2).

26 Although the State court resolved Petitioner's challenge to the amendment of the

27 indictment on the basis of state law, this Court must still determine whether that decision is

28 contrary to, on rests on an unreasonable application of, federal law.  Packer, 537 U.S. at 8

1   (holding that citation to federal law is not required and that compliance with the habeas statute

2   "does not even require awareness of our cases, so long as neither the reasoning nor the result

3   of the state-court decision contradicts them.")  "The Sixth Amendment guarantees a criminal

4   defendant a fundamental right to be clearly informed of the nature and cause of the charges in

5   order to permit adequate preparation of a defense." Sheppard v. Rees, 909 F.2d 1234, 1236 (9th

6   Cir.1990).   The notice provision of the Sixth Amendment is incorporated within the Due

7   Process Clause of the Fourteenth Amendment and applies to the states.  Gray v. Raines, 662

8   F.2d 569, 571 (9th Cir.1981); U.S.Const. amend. VI; Dunn v. United States, 442 U.S. 100, 106

9   (1979).  The "notice" requirement mandates that the indictment or information describe the

10  offense with sufficient specificity to enable the defendant to prepare a defense and to permit him

11  to avail himself of the protection against double jeopardy.  United States v. Cruikshank, 92 U.S.

12  542, 558 (1875).  An indictment which tracks the applicable state statute affords the defendant

13  fair notice of the charges.  United States v. Hester, 719 F.2d 1041, 1043 (9th Cir.1983).

14          Deficiencies in state court indictments do not provide a basis for federal habeas

15  corpus relief unless the deficiency renders the trial so unfair as to deprive the defendant of due

16  process.  Kotteakos v. United States, 328 U.S. 750, 757 (1946); Dunn, 442 U.S. at 105.  The

17  amendment of an indictment is governed by the same constitutional principles applicable to an

18  original charge.  Cole v. Arkansas, 333 U.S. 196, 201 (1948).

19          The Arizona Rules of Criminal Procedure require that an "indictment or information

20  shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of

21  the offense charged."  Ariz.R.Crim.P. 13.2(a).  The charging document "may be amended only

22  to correct mistakes of fact or remedy formal or technical defects."  Ariz.R.Crim.P. Rule 13.5(b).

23  "A defect in the indictment may be considered formal or technical when its amendment does

24  not operate to change the nature of the offense charged or to prejudice the defendant in any

25  way." State v. Bruce, 125 Ariz. 421, 423, 610 P.2d 55, 57 (Ariz. 1980). Permissible

26  amendments include those that change a charge of theft by control of property valued at $1,000

27  or greater to a more specific charge of theft of a motor vehicle, State v. Eastlack, 180 Ariz. 243,

28  883 P.2d 999 (1994); correct one number of a four-digit address of a burglarized place, State

1  v. Suarez, 106 Ariz. 62, 470 P.2d 675 (1970); correct a date, Bruce, 125 Ariz. at 423, 610 P.2d

2  at 57; correct a duplicitous indictment to allege only one offense, State v. O'Haire, 149 Ariz.

3  518, 720 P.2d 119 (Ariz.Ct.App. 1986); or correct the name of the victim corporation, State v.

4  Barber, 133 Ariz. 572, 653 P.2d 29 (Ariz.Ct.App. 1982), *approved*, 133 Ariz. 549, 653 P.2d 6

5  (1982).   Such amendments comport with the "notice" requirement of the Due Process clause

6  because in the foregoing cases,  the indictment described the offense with sufficient specificity

7  so as to enable the accused to prepare a defense and to permit him to avail himself of the

8  protection against double jeopardy. Cruikshank, 92 U.S. at 558.

9          Similarly, in this case, the amendment of the indictment did not violate Petitioner's

10  right to notice or compromise his ability to defend against the charge. Petitioner was charged

11  with theft based on his fraudulent acquisition of property from Taco Bell's vendors.

12  (Respondents' Exh. A) Before the State's opening statement, the description of the stolen

13  property in the indictment was amended to allege "money and/or property", rather than simply

14  "U.S. Currency." (Respondents' Exhs. B, A)  The amendment did not violate Petitioner's right

15  to notice or compromise his ability to defend against the charge. The allegations against

16  Petitioner did not change.  Rather, the description of the property allegedly misappropriated was

17  clarified.   Because the indictment was amended early in the proceedings, before opening

18  statements, Petitioner had "ample opportunity to prepare to defend against" the amended charge.

19  Cruikshank, 92 U.S. at 558. Petitioner had ample opportunity to modify his opening statement,

20  cross-examine the State's witnesses, and present evidence to defend against the amended charge.

21  The Court finds that the amendment to the indictment did not deprive Petitioner of due process.

22  Petitioner was "clearly informed of the nature and cause of the charges in order to permit

23  adequate preparation of a defense." Sheppard, 909 F.2d at 1236.  Additionally, as the state court

24  found, the record reflects that the original indictment was sufficient to put Petitioner on notice

25  that the charges pertained to his unlawful acquisition of property from Taco Bell's vendors as

26  evidenced by the nature of discovery which Petitioner sought and the evidence he sought to

27  suppress. (Respondents' Exhs. F-F)  Petitioner has not shown that the state court's resolution

28

1  of this issue was contrary to, or rested on an unreasonable application of, federal law.  28 U.S.C.

2  § 2254(d).  Accordingly, this claim does not provide a basis for habeas corpus relief.

3  **C. Ground 3 - Substitution of Trial Judge and Responses to Jury Questions**

4  In his third ground for relief, Petitioner argues that he was denied a fair and impartial

5  trial because there was a change of trial judges during the final day of jury deliberations.  He

6  further argues that defense counsel was not advised of jury questions and that the court clerk,

7  rather than the judge, answered the jury's questions.  (docket # 1 at 26-34)

8  Petitioner did not raise any of these issues during trial.  On direct appeal, Petitioner

9  claimed that the trial judge improperly delegated his duty to answer jury questions to "someone

10  else" and failed to inform the parties of the jury's questions.  (Respondents' Exh. W at 1, 43-45)

11  Petitioner did not, however, argue that the *court clerk* responded to the jury's questions and has

12  never presented this allegation to the state courts.

13  Although Petitioner did present the factual allegations concerning the substitution

14  of judges and *ex parte* communications with the jury on direct appeal, he presented those issues

15  as state, not federal, claims.  In his appellate brief, the heading of this claim stated that "[a]n

16  accused has a right to due process, a fair trial and the assistance of counsel."  U.S. Const.,

17  Amends V, VI, & XIV, Ariz. Const., Art. 2, §§ 4, 23 & 24."  (Respondents' Exh. W at 43)

18  However, Petitioner's mere citation to the United States Constitution is not sufficient to fairly

19  present his federal claims to the state courts. Baldwin, 541 U.S. at 29; Gray, 518 U.S. at 162-63.

20  In the body of his argument, Petitioner relied solely on Arizona law regarding the substitution

21  of judges (Respondents' Exh. W at 43) and additional jury instructions.  (Respondents' Exh. W

22  at 44)  Petitioner relied on state law and, consequently, the Arizona Court of Appeals resolved

23  Petitioner's claims on the basis of state law.  (Respondents' Exh. X at 7)  The Court of Appeals

24  noted that because Petitioner failed to object to the substitution of judges at trial, he had waived

25  that issue on appeal.  (Respondents' Exh. X at 7)  The Court further found pursuant to the

26  Arizona Rules of Criminal Procedure, the substitution of the trial judge on the last day of jury

27  deliberations due to the illness of the presiding judge was not error.  (Id.)

28

1       The Arizona Court of Appeals also analyzed Petitioner's claim regarding the court's
2   *ex parte* communication with the jury under Arizona law.  The court first noted that it was not
3   clear whether counsel was consulted regarding the jury's questions.   Although the transcript
4   does not contain any discussion of the jury questions, it does indicate that both counsel were
5   present. (Respondents' Exh. X at 7)  The appellate court further found that even assuming that
6   *ex parte* communication with the jury had occurred, there was no error because the judge
7   responded appropriately to the jury's questions and Petitioner had not suffered any prejudice.
8   (Respondents' Exh. X at 7-9)

9       In summary, Petitioner's allegations regarding the substitution of judges and *ex parte*
10  communication with the jury are procedurally barred because Petitioner did not present those
11  allegations as federal claims during state court proceedings.  Moreover, to the extent that
12  Petitioner raised those factual allegations to the state court, the court relied on a state procedural
13  rule to find that they were waived.  (Respondents' Exh. X at 7) The state court's reliance on a
14  procedural rule operates as a procedural bar to federal habeas review of those claims.
15  Nunnemaker, 501 U.S. at 802.  The state court's discussion of the merits of Petitioner's claims
16  does not vitiate the independent procedural bar.  Harris, 489 U.S. at 264 n. 10.

17      Finally, as to Petitioner's assertion that the court clerk responded to jury questions,
18  this claim is procedurally barred because Petitioner has never presented it to the state courts and,
19  pursuant to state procedural rules, a return to state court would be futile.  Teague, 489 U.S. at
20  297.  Because Petitioner's claims are procedurally barred, federal habeas review is unavailable
21  absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke,
22  541 U.S. at 393.  Petitioner has not made either showing.   Moreover, his claims fail on the
23  merits.

24          **1.  Substitution of Trial Judge**

25      Petitioner claims that the substitution of trial judges on the last day of jury
26  deliberations rendered his trial unfair.  The record reflects that the trial judge who presided over
27  the trial was ill on the last day of jury deliberations and that another judge took his place that
28  day. (Respondents' Exh. X at 6; Exh. S at 22)  The record does not describe the circumstances

1  surrounding the substitution of judges on the last day of deliberations.  However, it appears that

2  the Honorable Robert R. Gottsfield substituted that day.  (Petitioner's Exh. J1)   The minute

3  entry and the transcript from that day identify Judge Michael D. Jones as the presiding judge.

4  Additionally, the jury questions are signed "/s/ Michael D. Jones." However, during a

5  subsequent hearing, counsel reminded Judge Jones that because he was ill on the last day of

6  trial, findings still needed to be made regarding Petitioner's prior convictions.

7       A trial judge's physical absence from the proceedings during jury deliberations may

8  be considered error and whether that absence constitutes error depends on the facts of the case.

9  United States v. Arnold, 238 F.3d 1153, 1155 (9th Cir. 2001).  The Ninth Circuit has held that

10  a judge's physical absence from the court during jury deliberations was not error when the judge

11  conferred with counsel by telephone regarding a jury question, dictated an answer, and that

12  answer was transcribed and delivered to the jury which was unaware of the judge's absence.

13  Id. at 1156.

14  .     Unlike Arnold, in this case, Petitioner does not complain of a complete absence of

15  a trial judge.  Rather, he complains that a substitute judge replaced the presiding trial judge on

16  the second day of jury deliberations. The substitution of judges for a single day during a

17  criminal trial did not give rise to constitutional error. Arizona law expressly provides for

18  substitution of the original judge in the case of death, illness, and incapacity.  Ariz.R.Crim.P.

19  19.5 ("If the judge before whom a trial or other criminal proceeding is pending dies, becomes

20  ill, or in any other way becomes incapacitated, any other judge of the same court may take the

21  judge's place...").  Arizona law is also consistent with federal law which provides for the

22  substitution of judges when a judge presiding over a criminal trial becomes ill or otherwise

23  disabled during the course of the trial itself. Fed.R.Crim.P. 25(a) ("Any judge regularly sitting

24  in or assigned to the court may complete a jury trial if: (1) the judge before whom the trial began

25  cannot proceed because of death, sickness, or other disability; . . .").  In view of Judge Jones's

26  illness, temporary substitution for one day of trial did not give rise to a constitutional violation.

27  ///

28

### 2. *Ex parte* Communication with Jury

Petitioner further claims that the substituted judge erred in engaging in *ex parte* communication with the jury during deliberations. Even if the trial judge communicated with the jury in the absence of counsel, that communication does not entitle Petitioner to habeas corpus relief as discussed below.

The Sixth Amendment guarantees a defendant the right to be present, personally or through counsel, when the court responds to jury questions. United States v. Barragan-Devis, 133 F.3d 1287, 1289 (1998). The Supreme Court has addressed the issue of *ex parte* communications between trial judges and deliberating jurors. In United States v. United States Gypsum Co., 438 U.S. 422 (1978), the Supreme Court held that an *ex parte* meeting between the trial judge and the foreperson of a deliberating jury, standing alone, was not reversible error, "rather it is the fact that the *ex parte* discussion was inadvertently allowed to drift into what amounted to a supplemental instruction to the foreman relating to the jury's obligation to return a verdict, coupled with the fact that counsel were denied any chance to correct whatever mistaken impression the foreman might have taken from this conversation, that we find most troubling." Id. at 462.

In Rogers v. United States, 422 U.S. 35 (1975), the Supreme Court reversed a conviction based on Fed.R.Crim.P. 43 which guarantees a criminal defendant the right to be "present at every stage of the trial including the impaneling of the jury and the return of the verdict." Id. In Rogers, neither defendant nor his counsel were present when the judge answered a jury question. The judge's note directed the jury that it must find the defendant either guilty or not guilty. Id. at 38-39. The Rogers Court found that although a Rule 43 violation may be harmless error in some circumstances, in the view of the nature of the information conveyed to the jury, the error was not harmless in that case. The Court considered the communication from the jury "tantamount to a request for further instructions." Rogers, 422 U.S. at 39. The judge's direction introduced a new instruction that the jury was required to reach a verdict, thus precluding the jury from deadlocking. Id.

1    Under Supreme Court law, defendant or his counsel must be present until the jury
2    is discharged. Rogers, 422 U.S. at 38-39.  Violation of this rule is harmless provided the trial
3    court, in response to a jury question, does not inject a new instruction which is erroneous as a
4    matter of law or as to which the parties have not had an opportunity to be heard.  Wilson v.
5    Yarborough, No. CIV S-03-0703-MCE-CMK-P, 2006 WL 1582274, * 11 (E.D.Cal., June 2,
6    2006)(citing Jenkins v. United States, 380 U.S. 445 (1965)).  To determine whether the court's
7    ex parte communication with the jury was harmless, the court considers the following factors,
8    "the probable effect of the message actually sent back to the jury, the likelihood that the court
9    would have sent a different message had it consulted with defense counsel before responding
10    to the jury's inquiry, and whether any changes in the message that defense counsel might have
11    obtained might have affected the verdict."  Barragan-Devis, 133 F.3d at 1289.

12    In this case, the verdict forms required the jury to determine the fair market value
13    of the stolen property by selecting from five value ranges: $3,000 to 25,000; $2,000 to
14    $2,999.99; $1,000 to $1,999.99; $250 to $999.99; and Less than $250.00. (Respondents' Exh.
15    T) The jury's first question was whether the fair market value determination had to be
16    unanimous.  (Respondents' Exh. X at 8)  The trial court responded affirmatively.  (Id.)
17    Assuming that the court did not consult with counsel, there is no evidence that the court would
18    have responded differently had it consulted with defense counsel. The  response was not a
19    supplemental instruction.  Rather, the court merely reiterated a correct instruction that it had
20    already given.  (Respondents' Exh. P at 213-215); Wilson, 2006 WL 1582274, * 11 (holding
21    that even if trial court erred in responding to jury's question in the absence of the parties, any
22    error was harmless where in response to the jury's note which read "Do we need a unanimous
23    vote both to guilty and not guilty?," the judge responded, "Yes.")

24    The jury's second question was whether the value of the stolen property could range
25    from $3,000 to $5,000, a more precise range than the $3,000 - $25,000 range on the verdict
26    form. (Respondents' Exh. X at 8; Exh. T)  The court correctly responded that the range
27    identified in the jury's question was within the ranges provided on the verdict form.  The court
28    also stated that the jury could indicate separately on the verdict form if it believed that the

1    amount was less than $25,000 but more than $3,000.  (Respondents' Exh. X at 8)  Petitioner

2    claims that he was prejudiced because the response failed to remind the jury of the other

3    possible ranges included on the verdict form.  Contrary to Petitioner's assertion, the failure to

4    remind the jury of all of the value ranges on the verdict form did not prejudice Petitioner

5    because the verdict form plainly listed those ranges.  (Respondents' Exh. T)  Petitioner does

6    not allege that the court would have given a different response had it consulted with defense

7    counsel.  Moreover, the trial court's response to the jury did not amount to a new instruction.

8          In summary, assuming *arguendo* that the trial court engaged in the alleged *ex parte*

9    communications with the jury, the responses to the jury's questions were appropriate and did

10   not constitute additional instructions or erroneous information to the jury.  Any error in

11   providing such responses in the absence of the parties and/or counsel was harmless and does

12   not give rise to a claim for § 2254 relief.  Benn, 283 F.3d at 1052 n. 6.

13              **D.  Ground 4 - Jury's Exposure to Extra-Record Evidence**

14          Petitioner next argues that the he was denied a fair trial because the jury was

15   exposed to an article about dyslexia which appeared in the jury room during trial and that was

16   not part of the record.  (docket # 1 at 34-38)

17          During opening arguments, Petitioner claimed that he was dyslexic and stated that

18   he planned to present testimony regarding dyslexia if he could obtain an expert.  (Respondents'

19   Exh. M at 53)  On the third day of trial during the defense's case, the jury gave the bailiff a two-

20   page document on dyslexia which a juror found in the jury room during a break.  (Respondents'

21   Exh. M at 183, Exh. O) The trial court questioned the parties about the document and both the

22   prosecution and the defense denied having left the document in the jury room.  The court was

23   unable to ascertain the source of the document but noted that the jury room was used for

24   attorney conferences while the court was not in session.  The court then advised the jury that

25   the article could have been inadvertently left in the jury room by someone unrelated to the trial.

26   (Respondents' Exh. M at 186)  The court reminded the jurors that they are not permitted to

27   conduct independent research and investigation and instructed them to disregard the article

28

1   which was not evidence in the case.  (Respondents' Exh. M at 186) Petitioner did not object to

2   the manner in which the trial court handled the situation involving the article on dyslexia.

3   On direct appeal, Petitioner argued for the first time that he was entitled to a new

4   trial based on the jury's exposure to extra-record evidence.  (Respondents' Exh. W at 40-42,

5   Exh. Y at 7) Although Petitioner exhausted this claim by presenting it to the Arizona Court of

6   Appeals, it is procedurally barred because the state court applied a procedural bar to deny this

7   claim.  Specifically, the appellate court found that Petitioner had waived his challenge to the

8   extra-record evidence because he had failed to comply with Arizona's contemporaneous

9   objection rule at trial.  (Respondents' Exh. X at 5-6)  The contemporaneous objection rule is

10  regularly followed in Arizona.  State v. Gendron, 168 Ariz.153, 154, 812 P.2d 626, 627 (Ariz.

11  1991)(citing State v. Gendron, 166 Ariz. 562, 566 n. 3, 804 P.2d 95, 99 n. 3 (App.1990). Federal

12  habeas corpus review is barred by the state court's finding of procedural default absent a

13  showing of "cause and prejudice" or a "fundamental miscarriage of justice." Coleman, 501 U.S.

14  at 729-30.  Petitioner has not made such showings in this case.  Moreover, his claim lacks merit

15  as discussed below.

16  "Jury exposure to facts not in evidence deprives a defendant of the rights to

17  confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment."

18  Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995)(citations omitted). The court considers several

19  factors to determine whether the introduction of extrinsic evidence constitutes reversible error:

20      (1) whether the extrinsic material was actually received, and if so, how; (2)the
        length of time it was available to the jury; (3) the extent to which the jury
21      discussed and considered it; (4) whether the material was introduced before a
        verdict was reached, and if so, what point in the deliberation it was introduced;
22      and (5) any other matters which may bear on the issue of . . . whether the
        introduction of extrinsic material [substantially and injuriously] affected the
23      verdict.

24  Id. (citing Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir. 1986)).  Federal courts "place[]

25  great weight on the nature of the extrinsic evidence introduced."  Lawson, 60 F.3d at 612.

26  Here, a two-page article about dyslexia appeared in the jury room on the third day

27  of trial during a short recess.  Dyslexia was not a material issue in the case.  To the extent that

28  dyslexia was relevant, it was Petitioner who wanted to introduce such evidence.  After

1    discovering the article, jurors immediately contacted the bailiff and gave her the document.

2    (Respondents' Exh. M at 183)  The bailiff notified the judge at the conclusion of the fifteen

3    minute recess.  (Respondents' Exh. N at 5)  Although the court did not inquire as to the length

4    of time the jury had possessed the article, at most, the jury was exposed to the extrinsic evidence

5    for fifteen minutes, the duration of the recess.  (Respondents' Exh. N at 5)  There is no evidence

6    that the jury, either individually or collectively, read the contents of the article, discussed or

7    considered it.  The article appeared on the third day of trial while the defense was presenting

8    its case.  Upon learning of the existence of the article, the trial court questioned the parties

9    regarding its origin.  Both the prosecution and the defense denied prior knowledge of the article.

10   The court advised the jury that the article could have been inadvertently left in the jury room

11   by someone unrelated to the trial.  The court reminded the jury that it was forbidden from

12   conducting its own research or investigation and instructed them to disregard the article.

13   Petitioner never objected to the court's actions taken with respect to the article.

14           The Court finds that the jury's exposure to the article about dyslexia does not provide

15   a basis for habeas corpus relief.  The jury's exposure to the article or possibly the information

16   in it was brief; it appeared during the defense's case and, thus, Petitioner had sufficient

17   opportunity to address it. The trial judge directed the jury to disregard the article and reminded

18   them of the prohibition against conducting independent research. Finally, it was Petitioner who

19   sought to introduce evidence of dyslexia. Thus, Petitioner was not prejudiced by the jury's brief

20   exposure to it which Petitioner considered favorable to his defense.

21           **E.  Sentencing Issues**

22           Petitioner further argues that his sentence is unconstitutional under

23   Apprendi/Blakely[2] jurisprudence because his prior convictions were not found by a jury beyond

24   a reasonable doubt.  Petitioner also alleges that the trial court abused its discretion by imposing

25   an excessive sentence based on the trial court's bigoted religious beliefs. (docket # 1 at 38-56)

26   ///

27   _____

28       [2] Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004).

1

**1. __Apprendi/Blakely__ Claim**

2    On June 26, 2000, the United States Supreme Court issued __Apprendi v. New Jersey__,

3 530 U.S. 466 (2000), holding that, other than a fact of a prior conviction, any fact that increases

4 the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury

5 and proved beyond a reasonable doubt.  530 U.S. at 490.

6    In this case, on July 28, 2001, the trial court sentenced Petitioner to an enhanced 20-

7 year term of imprisonment.  (Respondents' Exh. V at 21-22)  Petitioner did not object to his

8 sentence when it was imposed. On direct appeal Petitioner argued for the first time that the

9 proof of his prior convictions was insufficient because the trial court did not determine the

10 felony class, the dates of commission and conviction of the offenses, and the applicable periods

11 of incarceration. (Respondents' Exh. W at 46-48)  Because Petitioner had not objected on these

12 grounds at trial, the appellate court reviewed Petitioner's claims for fundamental error.

13 (Respondents' Exh. X at 9-10)   The appellate court found that Petitioner's prior convictions

14 were sufficiently proven by Petitioner's admission during trial, the evidence presented during

15 the pretrial hearing regarding the admissibility of the prior convictions, and Petitioner's prison

16 record or "pen pack."  (Respondents' Exh. X at 9-10)

17    Thereafter, on March 6, 2003, Petitioner filed a petition for post-conviction relief

18 which the trial court denied. (Respondents' Exh. AA, EE)  Petitioner sought review and while

19 his appeal was pending, on June 24, 2004, the Supreme Court issued __Blakely v. Washington__,

20 542 U.S. 296 (2004) holding that in accordance with its prior decision in __Apprendi v. New__

21 __Jersey__, 530 U.S. 466 (2000), a defendant is entitled to a jury determination of any fact that

22 increases the penalty for a crime beyond the prescribed statutory maximum.  __Blakely__, 542 U.S.

23 296. On July 2, 2004, Petitioner filed a notice of change of law claiming __Blakely__ error and

24 requesting that his sentence be vacated on that basis.  (Respondents' Exh. GG)  The Court of

25 Appeals denied Plaintiff's motion finding that __Blakely__ did not apply retroactively to Petitioner's

26 case which was final on direct review before __Blakely__ was decided in 2004.  (Respondents' Exh.

27 HH)

28

1          As the state court correctly found, the Supreme Court has not made its decision in
2    Blakely retroactively applicable to cases on collateral review.  Schriro v. Summerlin, 542 U.S.
3    348 (2004); Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005)(holding that Blakely does
4    not apply retroactively to a conviction that was final before that decision was announced).
5    Because Blakely has not been made "retroactively applicable to cases on collateral review,"
6    Blakely does not apply in this case and Petitioner's Blakely claim fails.

7          Moreover, even if Apprendi/Blakely applied to Petitioner's case, no violation
8    occurred. The rule announced in Apprendi and extended in Blakely, does not apply to prior
9    convictions.  United States v. Booker, 543 U.S. 220, 244 (2005).   The Ninth Circuit has "held
10   that enhancing a defendant's sentence based on a prior conviction does not violate the Sixth
11   Amendment as interpreted by Blakely . . . and Booker."  United States v. Ladwig, 432 F.3d
12   1001, 1006 (9th Cir. 2005).  In other words, prior convictions need not be found by a jury
13   beyond a reasonable doubt.  Rather, judges may find prior convictions.  Ladwig, 432 F.3d at
14   1006 (9th Cir. 2005).  Similarly, the trial court may impose an aggravated sentence beyond the
15   statutory maximum based on "facts reflected in the jury verdict or admitted by the defendant."
16   Blakely, 542 U.S. at 303-04.

17         At trial, Petitioner admitted that he had two prior felony convictions and
18   acknowledged the he was represented by counsel in both cases.  (Respondents' Exh. P at 65,
19   123-24)  Other evidence of Petitioner's prior convictions was introduced during a pretrial
20   hearing pursuant to Ariz.R.Crim.P. 609.  During the sentencing hearing, the trial court reminded
21   the parties that it had thoroughly reviewed the "pen-pack" during the pretrial hearings.
22   (Respondents' Exh. S at 23-24; Exh. I at 120-23; Exh. K at 5-6) Defense counsel acknowledged
23   that Petitioner had two prior felony convictions for the purposes of sentence enhancement.
24   (Respondents' Exh. I at 121)  In view of the foregoing, there was sufficient evidence to establish
25   Petitioner's prior felony convictions and no Apprendi/Blakeky violation occurred.

26   **2.  Trial Judge Biased**

27         Petitioner further claims that the trial court imposed an enhanced sentence based on
28   its religious bias and "animosity against gay people."  (docket # 1 at 43)  Petitioner claims that

1  the trial judge's rulings, including his ruling permitting the amendment of the indictment,

2  evidenced his "personal disfavor" for Petitioner.  (Id.)  Petitioner has not previously raised this

3  claim before any court, therefore, it is unexhausted and procedurally defaulted because

4  Petitioner cannot now return to state court to present this claim.  Ariz.R.Crim.P. 32.1(d)-(h);

5  32.4(a).  Petitioner does not establish a basis for overcoming the procedural bar.  Coleman, 501

6  U.S. at 735.

7          Moreover, Petitioner does not provide any support for his claim that the trial judge

8  was biased or that the alleged bias impacted Petitioner's sentence.  Because this matter is before

9  the Court on habeas corpus review, the relevant inquiry is whether the state trial judge's

10  behavior rendered the proceeding so fundamentally unfair as to violate federal due process

11  under the United States Constitution.  Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).  In

12  a habeas corpus proceeding, a finding of judicial bias may not be made "unless it affirmatively

13  appears in the record that the court based its sentence on improper information." Farrow v.

14  United States, 580 F.2d 1339, 1359 (9th Cir.1978).  The question is not whether the habeas

15  court would have reached the same result as the state court, but rather whether the state court's

16  actions rendered the proceeding so fundamentally unfair as to violate federal due process.

17  Duckett, 67 F.3d at 740.

18          Petitioner argues that the trial judge imposed an enhanced sentence based on his

19  animosity against homosexuals.  Petitioner, however, fails to present any facts that would

20  support a finding of actual bias or create an inference of unconstitutional bias.  This case is

21  unlike any in which the Supreme Court has implied an unconstitutional bias. See Aetna Life Ins.

22  Co. v. Lavoie, 475 U.S. 813, 824 (1986)(calling for recusal where state supreme court justice's

23  interest was "direct, personal, substantial, [and] pecuniary"); In re Murchison, 349 U.S. 133, 138

24  (1955) (finding bias where judge acting as one-man grand jury in secret hearings charged two

25  witnesses with contempt and then presided over witnesses' contempt hearings); Taylor v. Hayes,

26  418 U.S. 488, 501-03 (1974) (finding bias where judge was subject to litigant's direct personal

27  insults).  Petitioner does not articulate any facts to overcome the presumption that the trial judge

28  was impartial. See Liteky v. United States, 510 U.S. 540, 556 n. 3 (1994) (holding that "when

1   intrajudicial behavior is at issue, manifestations of animosity must be much more than subtle

2   to establish bias"); Id. at 562, (Kennedy, J., concurring) (recognizing that the "conscientious

3   judge will, as far as possible, make himself aware of his biases . . . and, by that very

4   self-knowledge, nullify their effect").   Petitioner contends that the trial judge's sentencing and

5   rulings alone constitute evidence of bias.   However, "judicial rulings alone almost never

6   constitute a valid basis for a bias or partiality motion." Liteky, 510 U.S. at 555.   In view of

7   Petitioner's failure to articulate any facts establishing unconstitutional bias, his claim fails.

8               **F.  Ground VI - Unlawful Search and Seizure**

9               In Ground VI, Petitioner alleges that his conviction was obtained through the use of

10  evidence that was obtained pursuant to an unlawful search and seizure.  (docket # 1 at 57-64)

11  Petitioner asserts that the police conducted two illegal searches by forging the judge's signature

12  and placing a fake court seal on the two search warrants.  Petitioner acknowledges that he did

13  not raise this claim on direct appeal.  Rather, he raised this claim for the first time on post-

14  conviction review.  (docket # 1 at 59)  The state court found this claim precluded because

15  Petitioner had failed to raise this claim on direct review.  (Respondents' Exh. EE)

16              This claim is procedurally defaulted because Petitioner failed to present this claim

17  to the state courts in a procedurally appropriate manner. (Respondents' Exh. AA at 24)

18  Petitioner should have raised this claim on direct appeal.  Ariz.R.Crim.P. 32.2(a)(1) (stating that

19  "[a] defendant shall be precluded from relief under this rule based upon any ground: (1)

20  [r]aisable on direct appeal under Rule 31 or on post-trial motion under Rule 34."  On post-

21  conviction review, the trial court clearly denied Petitioner's Fourth Amendment claim  based

22  on an independent and adequate state procedural rule.  (Respondents' Exh. EE)  Accordingly,

23  Petitioner's Fourth Amendment claim is procedurally barred absent a showing of cause and

24  prejudice or a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  Petitioner has

25  not made these showings.

26              Moreover, Petitioner's Fourth Amendment claim is not cognizable on federal habeas

27  corpus review.  When the state provides an opportunity for full and fair litigation of a Fourth

28  Amendment claim, the federal court will not grant habeas corpus relief on the ground that

1  evidence obtained through an unconstitutional search or seizure was introduced at his trial.

2  Stone v. Powell, 428 U.S. 465, 494, r'hrg denied, 429 U.S. 874 (1976) ; Mitchell v. Goldsmith,

3  878 F.2d 319, 323 (9th Cir. 1989); Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986). Stone

4  only requires the opportunity for a full and fair hearing. Caldwell, 781 F.2d at 715. Whether

5  the state prisoner actually took advantage of that opportunity, or whether the state courts

6  correctly resolved the issue, is not relevant on federal habeas corpus review. Ortiz-Sandoval

7  v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996). "[A]n opportunity for a fair hearing forecloses this

8  court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action."

9  Caldwell, 781 F.2d at 715.

10        The record reflects that the state provided an opportunity for full and fair litigation

11  of Petitioner's Fourth Amendment claims. Petitioner filed several motions to suppress and was

12  provided with an opportunity to litigate his Fourth Amendment claims. (Respondents' Exh. H,

13  Exh. I at 123-28) Because the state provided an opportunity for Petitioner to raise his Fourth

14  Amendment claims, habeas corpus relief is not available on those grounds.

15              **G.  Ground VII - Failure to Disclose Evidence**

16        In his seventh ground for relief, Petitioner contends that the prosecution failed to

17  disclose financial reports which were favorable to the defense. (docket # 1 at 65)

18        Petitioner alleges that he did not raise this issue on direct appeal because he did not

19  discover the reports until after the direct appeal was filed. On post-conviction review, Petitioner

20  claimed that the prosecution suppressed exculpatory evidence. (Respondents' Exh. BB at 19)

21  He claimed that while his case was on direct appeal, he obtained copies of Taco Bell's financial

22  reports and receipts from the Peoria, Arizona Police Department. He further argued that those

23  documents indicated that he was convicted for thefts which occurred outside of the scope of the

24  indictment. (Respondents' Exh. BB at 24) On post-conviction review, the trial court found

25  Petitioner's claim precluded because he had not raised it on direct appeal. (Respondents' Exh.

26  EE) The court further found that

27        "[i]n regard to [Petitioner's] claim that newly discovered evidence exists,
     this court notes that [Petitioner] has failed to allege any facts from which
28        this court could conclude that [Petitioner] was diligent in discovering

1

2

3

>these facts and bringing them to the court's attention. More importantly,
>the newly discovered evidence must be such that it would likely have
>altered the verdict, if the information were known at the time of trial.
>The documents attached to the Supplemental Petition failed to meet this
>requirement." (Respondents' Exh. EE)

4      Thus, the state court rejected Petitioner's claim based on an independent and

5   adequate procedural ground and federal habeas review is barred absent a showing a cause and

6   prejudice or a fundamental miscarriage of justice. Carrier, 477 U.S. at 486; Nunnemaker, 501

7   U.S. at 802. Petitioner has not established cause and prejudice or a fundamental miscarriage

8   of justice to excuse the procedural bar. Accordingly, federal habeas relief is not available on

9   this claim.

10      **H. Conclusion**

11      Based on the foregoing, the pending Petition for Writ of Habeas Corpus should be

12   denied.

13      Accordingly,

14      **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus

15   pursuant to 28 U.S.C. § 2254 (docket # 1) be **DENIED**.

16      This recommendation is not an order that is immediately appealable to the Ninth

17   Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

18   Appellate Procedure, should not be filed until entry of the District Court's judgment. The

19   parties shall have ten days from the date of service of a copy of this recommendation within

20   which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Rules 72,

21   6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which

22   to file a response to the objections. Failure timely to file objections to the Magistrate Judge's

23   Report and Recommendation may result in the acceptance of the Report and Recommendation

24   by the District Court without further review. United States v. Reyna- Tapia, 328 F.3d 1114,

25   1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the

26   Magistrate Judge will be considered a waiver of a party's right to appellate review of the

27   / / /

28   / / /

findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. Rule 72, Federal Rules of Civil Procedure.

DATED this 3rd day of January, 2007.

Lawrence O. Anderson
United States Magistrate Judge