IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fox Salerno,<br><br>    Petitioner,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>    Respondents. | No. CV-05-1277-PHX-ROS<br><br>**ORDER** |

On January 3, 2007, Magistrate Judge Lawrence O. Anderson issued a Report and Recommendation ("R&R) recommending the petition for writ of habeas corpus be denied. Petitioner filed a lengthy objection. For the following reasons, the Court will adopt the R&R and the petition will be denied.

**I. Standard**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*). Petitioner objected to practically all aspects of the R&R, meaning the Court must review the facts and issues de novo.

## II. Background[1]

On November 12, 2000, Petitioner was charged with theft, a class 3 felony. According to the State of Arizona, Petitioner misappropriated funds and made unauthorized purchases while he was a manager of a Taco Bell restaurant. The original indictment alleged that Petitioner "without lawful authority, knowingly, obtained by means of a material misrepresentation, Taco Bell's U.S. Currency, of a value of $3,000 or more, but less than $25,000, with the intent to deprive Taco Bell of such property or services." The state also alleged four prior felony convictions. On May 10, 2001, and before jury selection began, the trial court questioned the state regarding the nature of the crime Petitioner allegedly committed. According to the state, Petitioner went to various businesses and purchased items on Taco Bell's accounts. Thus, Taco Bell lost money but Petitioner obtained goods, not currency. The trial court observed that "the way [the state] charged it in the indictment is that [Petitioner] received–without lawful authority he obtained, by means of a material misrepresentation Taco Bell's, U.S. Currency." The court believed this was a "curious way to charge" the crime because an indictment usually reflects what the defendant obtained, not what the victim lost. The court, however, decided to deal with the issue later. Jury selection then began.

Once the jury was selected, the clerk read the original indictment aloud. After giving the jury some preliminary instructions, the jurors were dismissed for the day. After the jurors had left, the trial court denied a motion to suppress filed by Petitioner.

At the start of the next trial date the judge granted the state's motion to amend the indictment. After the jury entered the courtroom, the clerk read the amended indictment. The amended indictment alleged Petitioner "obtained by means of a material misrepresentation, Taco Bell's U.S. Currency, that is money and/or property." The parties then gave their opening statements. Petitioner had chosen to represent himself. During his

---

[1] The R&R sets forth the factual background in much greater detail. Only the facts essential to a resolution of Petitioner's objections are recited in this Order.

- 2 -

1  opening statement, Petitioner stated he suffered from dyslexia. After opening statements, the
2  state presented its case. At the conclusion of the state's case, the court took a break.

3  When the trial reconvened, the court told the parties that the jurors had given the
4  bailiff a document on dyslexia they had found in the jury room. Petitioner denied bringing
5  the document to the courthouse or placing it in the jury room. The state also denied any prior
6  knowledge of the document. The court told the jurors not to consider the document and
7  reminded them not to conduct any outside research. Petitioner testified on his own behalf.
8  During his testimony he admitted he had two prior felony convictions. The case concluded
9  and the jury began its deliberations. The verdict form directed the jury to indicate the value
10 of the property stolen by Petitioner if they found him guilty.

11 On May 18, 2001, the jury submitted two questions to the court. The first asked if the
12 value of the stolen items had to be determined unanimously. The second asked whether the
13 value of the stolen property could range from $3,000 to $5,000. The judge responded by first
14 stating that the decision had to be unanimous. As for question two, the judge responded that
15 the verdict form already gave as a possible range the value of $3,000 to $5,000. The judge
16 also stated that the jury could indicate if they found that the value was less than $25,000 but
17 more than $3,000. Apparently the parties were not consulted prior to these answers being
18 given. Also, it is unclear which judge gave these answers. The minute entry and transcript
19 identify the Honorable Michael Jones as the judge present the day the questions were
20 answered. It now appears, however, that Judge Jones was ill that day and a substitute judge
21 answered the questions.

22 The jury returned a guilty verdict. The jury stated the value of the property Petitioner
23 had stolen was between $3,000 and $25,000. The jury also stated "[w]e believe the amount
24 should be between $3,000 and $3,500." Petitioner later escaped from custody, but was
25 apprehended a short time later. After determining that Petitioner had admitted two prior
26 convictions during his testimony, the trial court sentenced him to a 20-year term of
27 imprisonment.

28 Petitioner raises the following issues in his petition for writ of habeas corpus:

- 3 -

> 1) The trial court erred in failing to strike two prospective jurors for cause.
>
> 2) The indictment was improperly amended after jury selection but before opening statements.
>
> 3) Petitioner was denied a fair and impartial trial because: (a) the substitution of the judge was error; (b) defense counsel was not informed of jury questions and the court's responses; (c) an undisclosed answer to a jury question altered the verdict form; (d) jury questions were answered by the court clerk.
>
> 4) Petitioner was denied a fair trial because jurors were exposed to extra-record evidence.
>
> 5) Petitioner's sentence is unconstitutional because (a) the elements required to enhance Petitioner's sentence beyond the statutory maximum were not proved beyond a reasonable doubt; (b) the trial court imposed an enhanced sentence based on bigoted religious beliefs; and (c) the enhanced sentence violated the rule announced in Apprendi/Blakely.
>
> 6) Petitioner's conviction was obtained pursuant to an unlawful search and seizure.
>
> 7) The prosecution failed to disclose exculpatory evidence and (a) undisclosed supplemental police reports contained financial records of the corporate victim which Petitioner had requested, and (b) the undisclosed financial reports establish that Petitioner was convicted of unindicted charges.

## III. Analysis[2]

### A. Failure to Strike Jurors

Petitioner claims two jurors should have been struck for cause. The jurors Petitioner believes should have been removed for cause were excused via peremptory strikes. The Magistrate Judge correctly concluded that even if the trial court erred by not striking the jurors for cause, no error resulted because the jurors did not sit. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988) ("[W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.").

### B. Amendment of Indictment

---

[2] Because most of Petitioner's claims fail on the merits, the Court will not address the procedural bars applicable to all those that fail.

1  The indictment was amended to reflect that Petitioner obtained "money and/or 2 property," rather than simply "U.S. currency." Petitioner alleges the amendment to the 3 indictment immediately before he was to give his opening statement was prejudicial. The 4 Magistrate Judge correctly concluded that the original indictment described the alleged 5 offenses with sufficient specificity to enable Petitioner to prepare his defense and to allow 6 Petitioner to avail himself of the protection against double jeopardy. Based on the discovery 7 he sought and the evidence he sought to suppress, it is clear Petitioner was on notice that the 8 charges involved his illegal acquisition of Taco Bell's property. Petitioner has failed to show 9 he was prejudiced in any way by the technical clarification to the indictment.

### C. Substitution of Judge and Jury Questions

11  Judge Michael Jones presided over the trial. Based on the record, Judge Robert R. 12 Gottsfield substituted on one day of the trial due to Judge Jones being ill. The Magistrate 13 Judge correctly concluded that no constitutional violation occurred because of this 14 substitution.

15  Petitioner claims he was denied a fair trial because defense counsel was not informed 16 of the jury questions, the answers given to the jury were improper, and the court clerk, not 17 the judge, answered the questions. The Magistrate Judge correctly concluded that these 18 allegations are unfounded and insufficient to justify relief. Even if the Court were to agree 19 that defense counsel was not consulted prior to the answers being submitted to the jury, the 20 answers given to the jury were entirely appropriate. The only permissible answer to the first 21 question regarding the requirement of unanimity was "yes," which was the answer given. 22 Regarding the second question, the answer reminded the jury that the verdict form already 23 included various ranges and the jury was to indicate the appropriate range. See Wilson v. 24 Yarborough, No. CIV S-03-0703-MCE-CMK-P, 2006 WL 1582274 (E.D. Cal. June 2, 2006) 25 (finding no constitutional violation where trial court did not consult with counsel but "merely 26 reiterated the correct instruction the court had already given"). Because the answers to the 27 jury questions were appropriate, no constitutional violation occurred by defense counsel not 28 being informed of the questions prior to the judge answering them. Finally, the record is

unclear which Judge answered the jury questions. Petitioner has not presented sufficient evidence that the court clerk, not the judge, answered the questions.

### D. Evidence of Dyslexia

The Magistrate Judge correctly concluded that the jury's exposure to a document addressing dyslexia does not entitle Petitioner to relief. Dyslexia was not relevant to the case and the only party to mention it was Petitioner. Also, the jury's exposure was very brief and the trial judge specifically instructed the jury to disregard the document. Petitioner has not shown he suffered any prejudice. See Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995) (jury's exposure to evidence outside the record entitles individual to habeas relief "only if it can be established that the constitutional error had substantial and injurious effect or influence in determining the jury's verdict.") (quotations omitted).

### E. Sentence

The Magistrate Judge correctly concluded that the facts in Petitioner's case supported his sentence. The Apprendi/Blakely rule does not apply to prior convictions and Petitioner admitted during his testimony he had two prior convictions. Thus, the state court did not err by increasing Petitioner's sentence as a result of the prior convictions. Also, Petitioner has presented no evidence the trial judge was biased against him as a result of his sexual orientation.

### F. Search and Seizure

"[W]here the State has provided an opportunity for full and fair litigation of a fourth amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986) (quoting Stone v. Powell, 428 U.S. 465, 494 (1976)). Petitioner had a full and fair opportunity to litigate his fourth amendment claims in state court. Thus, the Magistrate Judge correctly determined Petitioner is not entitled to relief on these claims.

### G. Exculpatory Evidence

1  The Magistrate Judge correctly found that Petitioner's allegations regarding
2 exculpatory evidence were rejected by the state court on an independent and adequate
3 procedural ground. This procedural bar renders Petitioner ineligible for federal habeas relief
4 absent a showing of cause and prejudice or a fundamental miscarriage of justice. Dretke v.
5 Haley, 541 U.S. 386, 393-94 (2004) (discussing "cause and prejudice" and "fundamental
6 miscarriage of justice" standards for avoiding procedural bar). Petitioner has not made such
7 a showing and he is not entitled to relief on this issue.

8  Having reviewed the record and applicable law *de novo* where appropriate, the
9 Magistrate Judge's factual and legal conclusions are correct.

10  Accordingly,

11  **IT IS ORDERED** the Report and Recommendation (Doc. 61) is **ADOPTED** and this
12 case is **DISMISSED**.

  DATED this 30th day of March, 2007.

  _____
  Roslyn O. Silver
  United States District Judge

- 7 -